JOHN C. WHITSETT, *et al.*, Appellants, *vs.* AUGUSTUS A. BLU-
MENTHAL, *et al.*, Respondents.

1. *Security for costs—Power to compel.*—The power to compel the giving of se-
curity for costs is largely discretionary with the trial court.

2. *Practice, civil—Security for costs, when rule for improper—Ultimate liability
and inability.*—Where it appeared from an interlocutory decree, rendered in
favor of plaintiffs, that they were heirs to a valuable tract of land, together
with rents and profits, and usufruct derived therefrom, through a long series
of years, and from the report of a referee rendered thereunder, it appeared that
the estate was amply sufficient to meet all charges, the action of the court in
dismissing the case thereafter, on motion, for want of security for costs, on
proof that they possessed no other property subject to execution, was held to
be unwarranted, and was overruled on appeal. Security for costs should
not be demanded, except in case of the ultimate liability and inability of the
party to pay the costs.

## Appeal from St. Louis Circuit Court.

*T. W. C. Crews*, for Appellants, cited: Carroll vs. Hardy,
21 Mo. 66 ; Shields vs. Bogliolo, 7 Mo. 134; Johnson vs. Dev-
lin, 34 Mo. 427.

*George Denison*, for Respondents, cited.: Wagn. Stat. 342,
§ 2 ; Evans vs. Hays, 2 Mo. 184 ; Steamboat Osprey vs. Jen-
kins, 9 Mo. 645.

SHERWOOD, Judge, delivered the opinion of the court.

The propriety of the rulings which required the plaintiffs to
give security for costs, and the dismissal of their petition for
failure to do so, are the only points the record presents. From
that it appears that two little girls, the heirs of a handsome pat-
rimony, consisting of the undivided two-thirds of over three hun-
dred acres of land, lying in the counties of Franklin and St. Louis,
a large portion being within the present limits of, or adjacent to,
the town of Pacific, were despoiled of their heritage by an un-
warrantable proceeding in partition.   Upon attaining their ma-
jority they, together with their husbands, in July, 1869, brought
the present suit to set aside all the partition proceedings, on the
ground that the heirs had never appeared or been represented in
court.   They were successful so far as concerns the vacation of

the obnoxious proceedings, as an interlocutory decree was entered to that effect, which declared their interest as above stated, and appointed a referee to ascertain the rents, profits, etc., realized from the land, and in consequence of the sale of timber, sand, rock, lime, etc., therefrom, and also the amount of taxes paid by defendants, as well as the amount and nature of the improvements made by them on the property, the sums paid by them for the same, and likewise, what became of the shares of the two heirs now suing, in the money arising from the partition sale. This interlocutory order was made in June, 1870. The referee took an account of all these matters, and made a report June 15th, 1872 ; the plaintiff filed exceptions thereto ; the referee was, on July 13, 1872, allowed a fee of $500, and four days thereafter the referee, through one of the defendants' attorneys, filed a motion to rule the plaintiffs to give security for costs, alleging that they were "insolvent and unable to pay the costs accrued and which may accrue in said case."

On the hearing of this motion the defendants kindly volunteered their services, and showed that plaintiffs possessed no property other than that in controversy, subject to execution. Whereupon, the court, without examination of the report, or passing on the exceptions of the plaintiffs, made an order requiring them to give security for costs by the first day of the next term. This not being done, the cause was, on the 18th day of October, 1872, dismissed, and the plaintiffs are appellants here, having vainly filed a motion to reinstate the cause on the docket.

It cannot be disputed that it is a matter resting greatly in the discretion of the court, whether plaintiff, in a given case, shall be ruled to give security for costs or not, nor that, if such order be made, and is not complied with, the power exists to dismiss the suit on a failure of compliance with the order. But this rule is not, and cannot be, universal in its application. In other words, there is some limit to the exercise of the discretion confided to the trial court in this regard, and such discretion should not be allowed to proceed to extravagant length without rebuke. Under the circumstances of this case, the action of the court would seem indefensible. The theory upon which security for costs

proceeds is evidently the ultimate liability and the ultimate inability of the party from whom they are required, to pay them. In the case at bar, however, there was neither apparent liability or inability, on the part of plaintiffs, to pay the costs. The interlocutory decree shows this; shows besides, as before stated, that the heirs were entitled to two-thirds of a valuable estate, equal to two hundred and twenty-two acres of land, together with rents, profits and the sale of sand, lime and timber therefrom, during a long series of years.

The defendants, Blumenthal and Ault, paid for the tract $5,488.35, September 27th, 1855, at sheriff's sale. What it is worth now, since an addition to the town of Pacific has been laid out on the tract, does not appear; but judging by the figures just mentioned, the interest of the heirs would be worth at least two-thirds of that sum, or $3,658, while the charges brought against them by the referee are but $3,492, all told. Whether these charges should have been allowed at all by the referee, was a matter which could not, by any possibility be determined by the court until it had examined his report and passed on the plaintiff's exceptions. If those exceptions were allowed, this, in all probability, would have resulted in the extinguishment of the charges made against the plaintiffs. If, on the contrary, those exceptions were overruled, still, as above shown there was an apparently ample fund out of which to satisfy the costs, as before seen, even should it be held that heirs, when successful in such cases, should be mulcted in costs. And these heirs were successful; they had, by the terms of the interlocutory decree, wrested their property from the grasp of those who without authority had seized it, and there only remained the entry of the final decree to accomplish the full fruition of their hopes, by placing them again in possession of their own. And the statute is expressed that the party prevailing shall recover costs. (Wagn. Stat. 343, § 6.)

Taking all these matters into consideration, we do not regard the action of the lower court as the exercise of a sound or judicial discretion. The case is one which speaks to the ear of a

court of equity with a peculiarly persuasive tongue. Infants, whose very helplessness ever invokes the special cognizance and protection of a court of chancery, are, under the forms of law, robbed of their inheritance, and when, after years of litigation, they finally succeed in obtaining a declaratory and decretal recognition of their claims, their success is but transitory ; for soon they are blandly informed that, though in the possession of undoubted and recognized rights, yet that recognition is bare and meaningless, unless they can in their poverty, a poverty occasioned by the very acts which the interlocutory decree sets aside, assume an obligation for the payment of costs—costs which would have never existed but for the grasping greed of their numerous adversaries.

The judgment is reversed, and the cause remanded.   *Judges Napton and Hough concur ; Judge Wagner absent.*