**BEINDORF v. THORPE et al.**

No. 11935—Opinion Filed June 28, 1921.

Rehearing Denied Jan. 17, 1922.

(Syllabus.)

**1. Mortgages—What Conveyance a Mortgage.**

Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such. (Section 1156, Revised Laws 1910.)

**2. Same—Deed—When Construed to be a Mortgage.**

A deed absolute on its face, and a separate agreement executed on the same date as the deed wherein the grantee agrees to reconvey the same tract of land to the grantor, upon the payment of the consideration named in the deed with interest and taxes by a specified time, constitute together a mortgage, and under such instruments the right of redemption is not waived.

**3. Same—Deed—When Presumptively a Mortgage.**

Where, at the time of the execution of a deed, the grantor and grantee enter into a separate written contract under the terms of which the grantee agrees upon the payment of the consideration named in the deed with interest within a specified time to reconvey the lands to the grantor, the transaction is presumptively a mortgage.

Error from District Court, Caddo County; Cham Jones, Judge.

Action by Charles Beindorf against Pearl Thorpe, Mayme Wyatt, and Pearl Thorpe, as administratrix of the estate of Hiram T. Dayton, deceased, praying the judgment of the court decreeing a certain deed executed by the plaintiff to Hiram T. Dayton to be a mortgage. Judgment for the defendants, and plaintiff appeals. Reversed and remanded, with directions.

J. S. Estes and Twyford & Smith, for plaintiff in error.

Morris & Jameson, for defendants in error.

KENNAMER, J. This action was filed in the district court of Caddo county by Charles Beindorf, plaintiff, against Pearl O. Thorpe, Mayme Wyatt, and Pearl Thorpe, as administratrix of the estate of Hiram T. Dayton, deceased, defendants. The plaintiff in his petition prayed the judgment of the court decreeing a certain deed executed on the 11th day of July, 1910, by the plaintiff to Hiram T. Dayton, purporting to convey 160 acres of land located in Caddo county, to be a mortgage. The plaintiff alleged that on the same date of the execution of said deed, and as part and parcel of the same transaction, a written contract was executed, under the terms of which the deed executed was to be only a mortgage on the lands described in said deed and contract. The written contract entered into at the same time as the execution and delivery of the deed is as follows, to wit:

"This contract made and entered into on this 11th day of July, 1910, by and between H. T. Dayton, of Barton county, state of Missouri, party of the first part, and Chas. Beindorf, of Caddo county, state of Oklahoma, party of the second part, witnesseth:

"That the said first party has agreed to grant, sell and convey unto said second

party the following described real estate, situated in Caddo county, Oklahoma, to wit: The south one-half of the southeast one-quarter of section twenty-seven (27) and the north one-half of the northeast one-quarter of section thirty-four (34), in township six (6) north, range nine (9) west of the Indian Meridian, for the sum of two thousand seven hundred ($2,700.00) dollars, to be paid as follows: Two thousand seven hundred ($2,700.00) on or before the 11th day of July, 1913, with interest on the same at the rate of eight per cent. per annum payable annually, and it is hereby expressly agreed by the parties hereto that in case of default of the said second party in paying the principal sum when due or default in the payment of any of the interest thereon shall forfeit all the rights of the second party under this contract, at the election of the said first party. It is further expressly agreed that the said second party shall pay all taxes on said premises and shall keep the said property insured for the benefit of the said first party at the expense of the said second party, failure of the said second party to pay said taxes or insurance to forfeit all rights under this contract. It is further agreed that the said second party shall have possession of said premises during the life of this contract and shall be entitled to the rents and profits therefrom. It is further agreed that the said second party shall have the privilege to pay all or any part of said principal sum at any time prior to the said 11th day of July, 1913, and the interest on the part of said principal sum so paid stop at the date of payment.

"It is further expressly agreed and understood that the said second party shall keep the premises and the improvements thereon in a good condition and shall not allow any unnecessary waste or wear and tear thereon. It is further expressly agreed that time is the essence of this contract.

"In witness whereof the parties hereto have affixed their hands and seals the date and year above written.

"H. T. Dayton, First Party.

"Charles Beindorf, Second Party."

The defendants filed answer, admitting the death of Dayton, party of the first part mentioned in the contract, as pleaded by the plaintiff, the allegations as to heirship and representation, but alleged that the transaction, as pleaded by the plaintiff in regard to the sale of the land, was an outright sale for a consideration of the extinguishment of a debt of twenty-seven hundred ($2,700.00) dollars. Upon the trial of said cause before the court judgment was entered in favor of the defendants, decreeing that the plaintiff had no interest in the lands involved in the action. The plaintiff has appealed to this court and assigned numerous assignments of error as grounds for reversal of the judgment

The record discloses that the plaintiff, Charles Beindorf, for several years prior to July, 1910, had borrowed various sums of money from H. T. Dayton until he had become indebted to Dayton in the sum of twenty-seven hundred ($2,700.00) dollars, and that the lands in controversy were under mortgage to secure the payment of the borrowed money; that on the 11th day of July, 1910, Beindorf and Dayton went to the law offices of Starkweather & Morris and had prepared a warranty deed, which recited the payment of a consideration of twenty-seven hundred ($2,700.00) dollars by Dayton to Beindorf, said deed being executed by Beindorf to Dayton. That as part and parcel of the same transaction the written contract, as herein set out, was executed in duplicate, each party retaining a copy; that Beindorf remained in possession of the premises until sometime in 1914, when he delivered possession of the premises in controversy to Dayton. Beindorf contended in the trial of said cause that the premises were delivered to him under an agreement by which Dayton was to credit Beindorf with the rents from the premises on his indebtedness to Dayton. Numerous witnesses testified on the trial of said cause in behalf of each of the parties to this action.

The most serious conflict in the testimony presented by the record is as to whether or not on the date of the execution of the deed and contract the notes, which Beindorf had executed to Dayton, evidencing the money which he had borrowed from Dayton, were surrendered and delivered to Beindorf at the time the deed and contract were executed; it being contended by the defendants in the action that the execution of the deed and contract constituted an outright sale of the property to Dayton and that the contract constituted a conditional sale, or in effect gave Beindorf an option to repurchase the land within two years from the date of the contract, and that this contention is sustained and supported by reason of the evidence that Dayton surrendered the notes, which he held against Beindorf when the deed and contract were executed, thereby extinguishing the debt,

The trial court found that the deed was executed in full satisfaction and extinguishment of the debt due by Beindorf to Dayton, and that the same constituted an absolute conveyance of the property in controversy; that immediately thereafter,

and as a part of the same transaction, Dayton executed the written contract agreeing to sell the property in controversy to Beindorf upon the condition that Beindorf pay to Dayton the sum of twenty-seven hundred ($2,700.00) dollars on or before July 11, 1913, and as a conclusion of law the court held the transaction to be a conditional sale, conferring the right upon the part of Beindorf to repurchase the property described in the deed and contract.

We conclude, upon a careful examination of the record, that the only question necessary to a complete determination of this cause is whether or not the plaintiff by paying to the defendants the sum of twenty-seven hundred ($2,700.00) dollars, together with interest, is entitled to redeem the lands in controversy. The decisive question is, what kind of title did Dayton obtain under the terms of the deed and contract. Section 1156 of the Revised Laws of 1910 provides:

"Every instrument purporting to be an absolute or qualified conveyance of real estate or any interest therein, but intended to be defeasible or as security for the payment of money, shall be deemed a mortgage and must be recorded and foreclosed as such."

In this case the uncontradicted testimony shows that on July 11, 1910, the plaintiff was indebted to Dayton in the sum of twenty-seven hundred ($2,700.00) dollars; that the purpose of executing the written instrument and deed was to prevent Dayton from having to go to the expense of a foreclosure action in order to collect his debt. We are unable to find from the testimony that it was the intention of the parties that the plaintiff was agreeing to waive his right of redemption, but the written contract clearly shows that it was the intention of both parties that the plaintiff should, at least, have two more years in which to redeem the property from the debt that was due Dayton. It is true that the contract provided that in the event the plaintiff failed to make the payment within the two years, or default in the payment of interest or taxes, he forfeited his rights under the contract if Dayton elected to declare a forfeiture, but the evidence in the record shows conclusively that Dayton, at all times up until his death, expressed a willingness for Beindorf to redeem the property at any time he would pay the debt due him. A defeasance has been defined to be: "An instrument which defeats the force or operation of some other deed, or of an estate. That which is in the same

deed is called a condition and that which is in another deed is a defeasance." Bouvier's Law Dictionary. Now, in the case at bar the plaintiff was entitled to redeem his land upon the payment of his debt to Dayton, and whatever may be the form of the instruments executed, there is no escape from the conclusion in this case that under the terms of the written instrument executed at the same time the deed was executed the plaintiff was entitled, upon the payment of the money that he owed to Dayton, to have a reconveyance of his land. In the case of Kelly v. Leachman, 3 Idaho, 392, 29 Pac. 849, the court held:

"A deed absolute on its face, and a separate agreement by the grantee for reconveyance of the same tract of land to grantor, upon payment of consideration named in the deed, with interest, taxes, etc., by specified time, bearing same date as deed, constitute together a mortgage."

The authorities uniformly hold that the test in deciding whether the transaction constitutes a mortgage is the existence, or nonexistence, of the debt. McNamara v. Culver, 22 Kan. 460; 4 Kent, Com, page 144. The contract in question provided that the twenty-seven hundred ($2,700.00) dollars which was due Dayton by Beindorf was bearing interest at the rate of eight per cent. (8%) per annum payable annually; that Beindorf expressly agreed to pay all taxes on the premises, to keep the property insured for the benefit of Dayton, to keep the premises and improvements thereon in good condition, and not allow any unnecessary waste or wear or tear of the premises. In fact, the contract contained almost identically the same language as the ordinary real estate mortgage. The contract did not acknowledge payment in full of the debt, which existed on the date of this transaction; did not recite that the notes evidencing the indebtedness had been surrendered and canceled; nowhere did the contract provide that the first party, for and in consideration of the second party agreeing to pay the taxes, rent the premises to second party. The decisive facts, the extinguishment of the debt and the renting of the property by the first party to the second party, did not appear in the written instrument. These being the important facts in determining the intention of the parties, the surrender of the notes and the extinguishment of the debt should have been recited in the contract, followed by the renting of the premises by the first party to the second party. This would have left the transaction free from doubt, but these important facts having been omitted

from the contract raises a strong presumption that it was merely the intention of the parties to change the form of the security, leaving the second party with his right of redemption. In the case of Calhoun v. Anderson, 78 Kan. 746, 98 Pac. 274, the court announced the following rule:

"Where, at the time of the execution of a deed, the grantee and grantor execute a contract, by which the former agrees to sell, and the latter agrees to buy, the land for the amount constituting the consideration of the deed, the transaction is at least presumptively a mortgage."

We conclude in the case at bar that the great weight of authority supports the rule that an absolute deed, with a covenant by the grantee that he is to reconvey upon the repayment of a certain sum of money, with interest, within a specified time, or that an absolute deed executed together with separate instrument of even date, wherein the grantee in the deed agrees to reconvey upon the payment of a certain sum of money within a specified time, constitutes the deed a mortgage. Section 1156, Revised Laws of 1910; Weiseham v. Hocker, 7 Okla. 250, 54 Pac. 464; Jones, Mortg. secs. 246, 285; Krauss v. Potts, 38 Okla. 674, 135 Pac. 362; Devlin on Deeds (3rd Ed.) sec. 1101; Palmore v. City (N. M.) 142 Pac. 929; Preschbaker v. Feaman, 32 Ill. 475; Spicer v. Holbrook (Ky.) 66 S. W. 180; Snow v. Pressey, 82 Me. 552, 20 Atl. 78; Clark v. Lannon · (Mich.) 51 N. W. 359; Sowls v. Butler (Vt.) 44 Atl. 355; Marshall v. Stewart et al., 17 Ohio, 356; Mears v. Stroback (Wash.) 40 Pac. 621. This court, in the case of McKean et al. v. McLeod et al, decided March 29, 1921, 81 Okla. 77, 196 Pac. 935, in the opinion delivered by Mr. Justice McNeill, said:

"A deed absolute in form is, in fact, a mortgage, when given to secure the payment of money, even though the parties may have agreed that, upon default in payment within a fixed time, the deed should become absolute."

We desire to say that in the case at bar the respective contentions of the parties have been ably briefed by counsel, and upon a full and careful investigation of the record some doubt may exist as to the real intention of the parties, but this being an equitable action, no injustice whatever may result in determining the issues in favor of the plaintiff to the defendants, for when the debt is paid with accrued interest, the defendants have received all that Mr. Dayton was ever entitled to by reason of having loaned his money to the plaintiff; but, on the other hand, if an error was made against the plaintiff in holding that he has no right of redemption, a material injury would result to the plaintiff. We conclude that the weight of the testimony shows that there is a substantial equity in the property over and above the indebtedness, and the rule seems to be supported by the authorities, that if the transaction be shrouded in doubt, the plaintiff is entitled to prevail. The courts usually adopt the conclusion in doubtful cases that the instrument was intended to operate and have the effect of a mortgage and not an unqualified sale waiving all rights of redemption. Keithly v. Wood, 151 Ill. 566, 42 Am. St. Rep. 265; Jeffreys v. Charlton, 72 N. J. Eq. 340, 65 Atl. 711: Gassert v. Bogk, 7 Mont. 585, 19 Pac. 281, 149 U. S. 17. 37 L. Ed. 631; Turnipseed v. Cunningham, 16 Ala. 501. 50 Am. Dec. 190: Niggles v. Maurin (Minn.) 23 N. W. 369.

The judgment is reversed. and the cause remanded, with directions to the trial court to grant a new trial and have an accounting as to the rental value of the premises and ascertain the amount of money due the defendants. crediting the plaintiff with the reasonable rental value of the premises during the time same were occupied by Dayton and his heirs. and render judgment decreeing the deed to be a mortgage and permit the plaintiff to pay the amount of the indebtedness found to be due and make redemption of the property.

HARRISON, C. J., PITCHFORD, V. C. J.. and McNEILL, MILLER, ELTING, and NICHOLSON, JJ., concur.